**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PATRICK W. GRIFFIN, | ) | CASE NO. 1:17-CV-00917 |
| | ) | |
| Petitioner, | ) | JUDGE JAMES G. CARR |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| ALAN J. LAZAROFF, Warden, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

Petitioner, Patrick W. Griffin (hereinafter "Petitioner" or "Griffin"), challenges the

constitutionality of his conviction in the case of *State of Ohio v. Griffin*, Lorain County Court of

Common Pleas Case No. 10CR080110. Petitioner, *pro se*, filed his Petition for a Writ of Habeas

Corpus pursuant to 28 U.S.C. § 2254. (R. 1). Warden Alan J. Lazaroff[1] ("Respondent") has filed

an Answer/Return of Writ. (R. 9), and Petitioner has filed a traverse. (R. 17). This matter is

before the undersigned Magistrate Judge pursuant to Local Rule 72.2. For reasons set forth in

detail below, it is recommended that the habeas petition be DISMISSED.

---

[1] Alan Lazaroff is warden of the Mansfield Correctional Institution, in Mansfield, Ohio, where
Griffin was incarcerated at the time he filed his petition. (R. 9, PageID# 89). Griffin currently is
incarcerated at the NorthEast Ohio Correctional Center in Youngstown, Ohio. (R. 28).

## I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012) ("State-court factual findings are presumed correct unless rebutted by clear and convincing evidence.") The Ninth District Court of Appeals ( "state appellate court") summarized the facts underlying Petitioner's conviction as follows:

> {¶ 2} On the morning of November 26, 2009, the police discovered the body of Alberto "Cookie" Gutierrez in a ditch on Pratt Road in Lorain County. The police soon identified Griffin as a person of interest. Griffin lived across the hall from Cookie in the same apartment complex and his cell phone number was the last number dialed on Cookie's cell phone. Through further investigation, the police discovered that Griffin lied about his whereabouts around the time of the murder and that his cell phone and car were in the approximate vicinity of the murder scene near Cookie's estimated time of death. Forensic testing also later uncovered gunshot residue on a glove in Griffin's car as well as primer residue in his car and on the cuff of his jacket.

> {¶ 3} A grand jury indicted Griffin on counts of aggravated murder, murder, felony murder, felonious assault, and having weapons under disability. All of the counts also contained an attendant firearm specification, and four of the counts contained repeat violent offender specifications. Griffin filed a motion to suppress certain cell phone records that the State obtained to triangulate the position of his cell phone during and around the time of the murder, but the trial court denied his motion. Subsequently, the matter proceeded to a jury trial, and the jury found Griffin guilty on all counts. The trial court then sentenced Griffin to life in prison.

>                                    ***

> {¶ 14} Mariano Gutierrez, Cookie's father, testified that Cookie agreed to live with him in his apartment and help take care of him after he had to have his leg amputated. The apartment was located across the hall from an apartment occupied by Griffin, his wife, and her two children. Benvenita Dominguez, Cookie's niece and Gutierrez' granddaughter, testified that Cookie sometimes socialized with Griffin. He also detailed Griffin's car. John Dalton, a friend of Cookie's, testified that Cookie once introduced him to Griffin and described Griffin as "a good dude" who allowed Cookie to borrow his car.

2

{¶ 15} Ronaye Ewing, Griffin's wife, testified that the door to the apartment she and Griffin shared "was kicked in" on November 25, 2009, the day before Thanksgiving. Although Ewing did not notice anything missing from the apartment, she testified that their X-box had been thrown to the floor and a cabinet was open. The same day, Griffin approached another tenant regarding the break in. Aubry Brown testified that Griffin confronted her with a revolver and demanded to know who had broken into his home. Brown testified that Griffin was angry and pointed the gun at her during their conversation. She further testified that Griffin had the handle of the gun wrapped in a clear bag as if he was trying to avoid leaving fingerprints on the gun. According to Brown, when she told Griffin that she did not know anything about the break in, he left her alone and said he would find out who was responsible.

{¶ 16} Dalton testified that he picked up Cookie at his apartment building around 7:30 p.m. the night of the 25th and brought Cookie to his house for a small party. Dominguez was in the apartment building visiting her aunt and went to check on her grandfather after Cookie left. Dominguez testified that she saw Griffin walking into his apartment as she left her aunt's apartment. She further testified that Griffin came back out into the hallway and asked her if Cookie was there at the apartment. When Dominguez told Griffin that Cookie was not there, he went back into his apartment and closed the door.

{¶ 17} Cookie remained with Dalton and his family for the rest of the evening. Dominguez testified that she spoke with Cookie around 11:30 p.m. because he called to give her a recipe. At some point close to 1:00 a.m. on Thanksgiving Day, Dalton testified, he dropped off Cookie at his apartment. Nicole Booth, another tenant, was outside her apartment smoking at the time and spoke with Cookie for a few minutes when he arrived. Booth testified that after Cookie spoke with her she saw him walk to Griffin's door, knock, and go inside. Booth never saw who opened the door and returned to her apartment shortly thereafter. Gutierrez testified that he stayed up until approximately 3:30 a.m. on Thanksgiving Day waiting for his son to arrive, but Cookie never came back.

{¶ 18} At about 7:30 a.m. on Thanksgiving Day, Larry Eishen spotted a body lying in the ditch alongside Pratt Road and called 911. The police found a wallet and cell phone on the body and soon identified the body as Cookie's. Dr. Paul Matus, the Lorain County Coroner at the time of Cookie's death, testified that Cookie died as a result of two gunshot wounds to his abdomen and estimated that his approximate time of death was 2:30 a.m. Dr. Matus further testified that one of the gunshots Cookie sustained had struck the zipper of his jacket and had knocked out some of its teeth.

{¶ 19} Detective Anthony Kovacs testified that he examined Cookie's cell phone and determined that the last number he had dialed was a cell phone number that the police later traced to Ewing and Griffin. Detective Kovacs drove to Cookie's

3

apartment building later in the day to assist with the death notification. At that time, the police showed Dominguez pictures of Ewing and Griffin, and she identified them as Cookie's neighbors. She also gave the police a description of their cars. Detective Kovacs found Griffin's car, an old, maroon Cadillac, parked in the back of the apartment building. Upon inspecting the car from the outside, Detective Kovacs observed long grass on the driver's side floorboard, which he believed was the same type of grass that he had observed at the murder scene. The police ultimately towed Griffin's car and obtained a warrant before searching it. The search uncovered a glove on the driver's seat, more grass on the floor, and a very small piece of metal on the front passenger floor mat. The car was also swabbed for gunshot residue.

{¶ 20} Detective Michael Lopez testified that he spoke with Griffin directly after the police delivered the death notification to Cookie's family. Detective Lopez testified that Griffin hesitated when answering questions. Griffin claimed that the last time he saw Cookie was sometime around 3:00 p.m. the day before (November 25th). He denied speaking with Cookie on the phone at some point later and denied having left the apartment the previous night. Later in the same conversation, however, Griffin changed his answer and indicated that Cookie had called him at about 1:00 a.m. that morning (November 26th) and asked him to come out for a drink. According to Detective Lopez, Griffin appeared very nervous when the police finally told him that they had found Cookie and he was dead. Detective Lopez testified that he specifically asked Griffin about his car and Griffin stated that he had not used the car to give Cookie a ride and had not gone anywhere during the late evening hours of November 25th or the early morning hours of November 26th.

{¶ 21} During their investigation, the police obtained Griffin's cell phone records and also conducted a search to determine whether any officer had run Griffin's license plate number through LEADS around the time of the murder. There was testimony that Ewing was listed as the subscriber of three different cell phone lines, but Ewing clarified that she only used one of the phones and Griffin and one of her children used the other two. Ewing confirmed that Griffin used the cell phone number that appeared on Cookie's cell phone as the last number dialed.

{¶ 22} Officer Christine Roberts testified that she performed a cell phone and cell tower analysis of Griffin's cell phone line using the cell phone records the police subpoenaed from the phone's provider. Officer Roberts explained that cell phones transmit a radio frequency and connect to a particular cell tower each time an outgoing call is made or an incoming call is received. In addition to logging all the calls made and received on a cell phone, Officer Roberts testified, cell phone providers also code each call by the particular tower used to transmit the call. She explained that cell phone towers all generally have three sides with one side oriented to the north. When a cell phone signal connects to a tower, it only connects to one of the three sides of the tower. The signal then remains connected

4

to that side of the tower unless the cell phone is moved or the call terminates. If the phone is moved outside the range of the tower itself or a particular side of the tower, the phone's signal will then connect to a different tower or different side of the same tower. Officer Roberts testified that the provider of Griffin's cell phone included in the coding for each outgoing and incoming call the particular tower and side of the tower the phone's signal connected with at the point each call was initiated and at the point each call was terminated. Using that information, Officer Roberts was able to plot any movement of Griffin's cell phone during the time in question and approximate its position. Officer Roberts explained that she was only able to approximate position because the range of any given tower varies. Accordingly, Officer Roberts could narrow the cell phone to being located anywhere within the range of a particular side of a particular tower, but not precisely where the phone was within that range.

{¶ 23} Officer Roberts testified that eight calls were logged on Griffin's cell phone between 12:09 a.m. and 12:51 a.m. on November 26, 2009 (Thanksgiving Day). Each of the eight calls connected to Griffin's home cell tower; the tower that Officer Roberts identified as the one that would be used to connect any calls Griffin made or received while at his apartment. Officer Roberts testified that another call at 1:14 a.m. connected to a different tower that was southeast of Griffin's home tower, meaning that someone had taken the phone southeast at that point. The phone continued to move south and, at 1:47 a.m., connected to a tower in Wellington whose range covered the area of Pratt Road where Cookie's body was found. Subsequently, another call at 2:15 a.m. showed that the cell phone was moving back north. The phone continued to travel north, connecting with a tower north of the murder scene at 2:25 a.m. and different sides of another tower at 2:31 a.m., 2:38 a.m., and 2:48 a.m. Finally, Officer Roberts testified, the phone's signal connected to the home tower again at 3:35 a.m. She further testified that the phone traveled again the following morning, connecting with towers headed southeast of Wellington before eventually returning to Griffin's home tower.

{¶ 24} Ewing testified that she remained at the apartment the night of November 25th through the following morning. She testified that she slept on the apartment's couch and faded in and out as the night went on because she had taken Vicodin to cope with pain she felt from a recent surgery. According to Ewing, Griffin kept walking in and out of the apartment while she slept. Griffin was not there, however, at one point when Ewing awoke, so she called his cell phone. Ewing agreed based on the cell phone records that she had called Griffin at 1:14 a.m. on November 26th. When she was unable to get a hold of Griffin, Ewing went back to sleep. She woke up at some point later and discovered that Griffin was home. Ewing also testified that later that Thanksgiving morning, Griffin traveled south near Wellington to pick up her daughter from a relative's house.

{¶ 25} Officer William Flesch of the City of Oberlin Police Department testified that he was patrolling Oberlin Road around 1:30 a.m. on November 26th. He

testified that he decided to run the license plate of a dark colored, late model Cadillac through LEADS when he observed it traveling down Oberlin Road. Officer Flesch followed the car for a short period, but never stopped it because he did not detect any infractions. He never saw the driver, but remembered watching the car turn eastbound onto Parsons Road before he drove away. Officer Flesch could not recall the license plate number of the car, but Officer Russell Scarbrough, a supervisor in the Communications Center of the Lorain County Sheriff's Office, confirmed the LEADS check that Officer Flesch had performed. The check took place at 1:31 a.m. on November 26th and the checked plate number matched the plate number of Griffin's Cadillac.

{¶ 26} Several members of the Bureau of Criminal Identification and Investigation ("BCI") tested various items that were taken from Griffin's car and his apartment. Christopher Smith, a forensic scientist in the DNA and Forensic Biology Section, testified that he performed a DNA analysis on the glove taken from Griffin's car. He confirmed that DNA he found inside the glove was consistent with Griffin's DNA. Smith also tested a jacket taken from Griffin's apartment and confirmed that the DNA profile he obtained from the jacket was consistent with Griffin's. Martin Lewis, a forensic scientist in the trace evidence section, testified that he performed gunshot residue testing on the glove, the jacket, and several swabs taken from Griffin's car. Lewis testified that he found particles highly indicative of gunshot residue on the glove. He further found particles highly indicative of gunshot primer residue on the left cuff of Griffin's jacket, the steering wheel of his car, and the back of the front passenger seat of his car.

{¶ 27} In addition to performing gunshot residue testing, Lewis was asked to examine the very small piece of metal that Detective Kovacs discovered on the front passenger floor mat of Griffin's car. Specifically, Lewis compared the piece of metal to the zipper teeth of the jacket Cookie was wearing when he was shot. As previously discussed, the coroner observed that one of the gunshots inflicted upon Cookie struck the zipper portion of his jacket and dislodged some of its teeth. Lewis opined that the small piece of metal he examined was the same color, shape, and size as the zipper teeth on Cookie's jacket. He also performed an infrared analysis and determined that both the small piece of metal and the zipper teeth exhibited the same chemical properties.

{¶ 28} The police never recovered the firearm used to shoot Cookie. They also never found any bullet casings at the scene. Michael Roberts, a forensic scientist from BCI's Firearms Department, noted, however, that unlike the bullet casings ejected from a semi-automatic weapon, bullet casings will remain in a revolver until manually removed from its chambers. As previously discussed, one of the tenants of Griffin's apartment testified that he had pointed a revolver at her the day before Cookie's murder, when questioning her about a break in.

{¶ 29} The only witness presented by the defense was Amanda Varney, a resident of Jones Road in Wellington. Varney testified that Jones Road is located within 1.5 miles of Pratt Road, the road on which Cookie's body was found. Varney testified that she was routinely awake during the night for short periods of time around Thanksgiving 2009 because she was pregnant and was not sleeping well. According to Varney, she distinctly heard three gunshots fired at about 2:15 a.m. on Thanksgiving Day (November 26th). At that time, Griffin's cell phone records showed that his cell phone was no longer in the area. Varney admitted, however, that it was quite common to hear gunshots in the area. Larry Eishan, the man who discovered Cookie's body on Pratt Road, also testified that there were frequent gunshots in the rural area.

*State v. Griffin*, No. 11CA010128, 2013 WL 500376, at *1 (Ohio Ct. App. Feb. 11, 2013).

## II. Procedural History

### A.    Conviction

On March 4, 2010, the Lorain County Grand Jury indicted Griffin on the following charges:   one count of aggravated murder in violation of Ohio Rev. Code § 2903.01(A), with attached firearm and repeat-violent-offender specifications; two counts of murder in violation of Ohio Rev. Code § 2903.02(A), (B), each with attached firearm and repeat-violent-offender specifications; one count of felonious assault in violation of Ohio Rev. Code § 2903.11(A)(1), with attached firearm and repeat-violent-offender specifications; and one count of having weapons while under disability in violation of Ohio Rev. Code § 2923.13(A)(2), with an attached firearm specification. (R. 9-1, Ex. 1.) Griffin entered pleas of not guilty to all charges. (R. 9-1, Ex. 2). On June 3, 2010, the grand jury indicted Griffin on an additional charge of murder in violation of Ohio Rev. Code § 2903.02(B), with attached firearm and repeat-violent-offender specifications. (R. 9-1, Ex. 3). Griffin entered a not-guilty plea to this charge as well. (R. 9-1, Ex. 4).

The trial court conducted several pre-trial conferences. (R. 9-1, Ex. 5). Griffin waived his speedy-trial rights at most of the pre-trials. (R. 9-1, Ex. 5).

7

On October 8, 2010, Griffin filed a motion to suppress evidence seized from two automobiles. (R. 9-1, Ex. 8). The trial court held a hearing on the motion and denied it. (R. 9-1, Ex. 10).

On January 27, 2011, the State filed a motion to continue the trial date to obtain an expert witness and report. (R. 9-1, Ex. 6). On January 28, 2011, the trial court held a hearing on the matter and granted the State's motion. (R. 9-1, Ex. 7).

On April 28, 2011, Griffin filed motion to suppress evidence seized from a cell phone and a motion for leave to file the motion to suppress. (R. 9-1, Exs. 11, 12). The State opposed the motions. (R. 9-1, Ex. 13). The trial court granted the motion for leave but denied the motion to suppress. (R. 9-1, Ex. 14).

On November 9, 2011, after a jury trial, Griffin was found guilty of all charges, except one of the murder charges, which was dismissed by the court at the State's request. (R. 9-1, Ex. 15).

On November 14, 2011, the trial court held a sentencing hearing. (R. 9-1, Ex. 16). It sentenced Griffin to a prison term of life with no chance of parole for thirty years for the aggravated murder charge and twenty-four months' imprisonment for the weapons-under-disability charge, to be served concurrently. (R. 9-1, Ex. 16). The State elected to have no sentences for the murder and felonious assault charges. (R. 9-1, Ex. 16). The court further sentenced Griffin to three years' imprisonment for the firearm specification, to be served consecutive to, and before, any time was served on the other counts; and ten years' imprisonment for the repeat-violent-offender specification, to be served after the firearm-specification sentence but before any time was served on the other counts. (R. 9-1, Ex. 16). Griffin, therefore, was sentenced to a total term of life in prison with no chance of parole for forty-three years. (R. 9-1,

Ex. 16).

**B.     Direct Appeal**

On December 9, 2011, Griffin, through counsel, filed a notice of appeal (R. 9-1, Ex. 17)

with the Ninth District Court of Appeals ("state appellate court") and raised the following

assignments of error:

> 1.     The prosecutor committed misconduct when Mr. Griffin's exercise of his
>        constitutional rights was used against him at trial.
>
> 2.     Mr. Griffin's convictions are against the manifest weight of the evidence.
>
> 3.     The trial court erred in denying Mr. Griffin's motion to suppress evidence
>        seized from his cellular phone.
>
> 4.     The trial court erred in failing to properly instruct the jurors regarding the
>        testimony of co-defendant Ronaye Ewing.
>
> 5.     The trial counsel was ineffective where counsel failed to bifurcate the
>        single count of having a weapon under disability and instead allowed the
>        jury to learn of Appellant's prior criminal history.

(R. 9-1, Ex. 18).

Almost a year later, on December 7, 2012, Griffin, *pro se*, filed a "Request [for] Leave to

Transmit and Certify the Record, and File Pro-Se Assignments of Error." (R. 9-1, Ex. 20). In that

motion, he requested permission to supplement his prior brief with the following proposed

assignments of error:

> 1.     The verdicts are against the sufficiency of the evidence in violation of Mr.
>        Griffin's rights under the Fifth, Sixth, and Fourteenth amendments to the
>        United States Constitution, and Article One, Section 10 of the Ohio State
>        Constitution.
>
> 2.     The verdicts are against the manifest weight of the evidence in violation of
>        Mr. Griffin's rights under the Fifth, Sixth and Fourteenth amendments to
>        the United States Constitution, and Article One, Section 10 of the Ohio
>        State Constitution.

3.      Appellant was denied effective assistance of counsel in violation of his
rights under the Sixth[] and Fourteenth amendment[s] to the United States
Constitution, and Article One, Section 10 of the Ohio State Constitution.

4.      The trial court erred in refusing to instruct the jury on the offense of
voluntary manslaughter.

5.      Appellant was deprived [of] a fair trial and due process of law as
guaranteed by the Ohio and United States constitutions, due to the
effective assistance of counsel resulting from counsel's refusal to obtain
experts to assist in his defense.

6.      The trial court erred in denying Mr. Griffin's motion to suppress evidence
seized from his vehicle.

7.      The prosecut[ion] committed misconduct because it failed to correct false
testimony.

(R. 9-1, PageID# 339, Ex. 20).[1]

On February 11, 2013, the Ohio appellate court affirmed the trial court's judgment. (R. 9-

1, Ex. 21.) The court addressed only the five assignments of error raised by appellate counsel in

Griffin's original appellate brief. (R. No. 9-1, Ex. 21.)

On March 29, 2013, Griffin, acting *pro se*, filed in the Ohio Supreme Court a notice of

appeal of the appellate court's judgment and motion for leave to file a delayed appeal. (R. 9-1,

Exs. 22, 23). The court granted the motion for leave on May 22, 2013. (Doc. No. 9-1, Ex. 24.)

In his memorandum in support of jurisdiction, Griffin raised the following sole proposition of

law:

Appellants [sic] verdicts are against the manifest weight of the evidence in
violation of Mr. Griffin's rights under the Fifth, Sixth, and Fourteenth
Amendment[s] to the United States Constitution, and Article I, Section 10 of the
Ohio State Constitution.

---

[1] The state appellate court's online docket shows the court did not rule on the pro se motion.

10

(R. 9-1, PageID# 493, Ex. 25).

On October 23, 2013, the Ohio Supreme Court declined jurisdiction over the appeal. (R. No. 9-1, Ex. 27).

**C.     Application to Reopen Pursuant to Ohio App. R. 26(B)**

Meanwhile, on May 10, 2013, Griffin, *pro se*, filed an application to reopen his direct appeal pursuant to Ohio Appellate Rule 26(B). (R. 9-1, Ex. 28.) In his application, Griffin asserted that he was denied the effective assistance of appellate counsel for failing to raise on direct appeal the following assignment of error:

> Appellant was deprived a fair trial and due process of law as guaranteed by the Ohio and United States constitutions due to the ineffective assistance of counsel resulting from counsel's refusal to obtain experts to assist in his defense.

(R. 9-1, PageID# 538, Ex. 28).

On June 14, 2013, the state appellate court denied the application as meritless. (R. 9-1, Ex. 29).

On July 28, 2013, Griffin, *pro se*, filed a notice of appeal of the state appellate court's judgment in the Ohio Supreme Court. (R. 9-1, Ex. 30). In his memorandum in support of jurisdiction, Griffin raised the following sole proposition of law:

> Appellant was deprived a fair trial and due process of law as guaranteed by the Ohio and United States constitutions due to the ineffective assistance of counsel resulting from counsel's refusal to obtain experts to assist in his defense.

(R. 9-1, Ex. 31).

On October 23, 2013, the Ohio Supreme Court declined jurisdiction over the appeal. (R. 9-1, Ex. 33).

On February 12, 2014, Griffin, *pro se*, filed in the state appellate court a "Delayed Application for Reconsideration Pursuant to App. R. 26(A)(1)(a)," requesting that the appellate

11

court reconsider its February 2013 decision affirming his convictions on direct appeal. (R. 9-1, Ex. 34). He asserted two claims in his application:

1. The verdicts are against the manifest weight of the evidence in violation of Mr. Griffin's rights under the Fifth, Sixth, and Fourteenth amendment[s] to the United States Constitution, and Article [I], Section 10 of the Ohio State Constitution.

2. The prosecutor committed misconduct because it failed to correct false testimony.

(R. 9-1, PageID# 709, 712, Ex. 34).

On April 9, 2014, the appellate court denied the application for reconsideration as untimely. (R. 9-1, Ex. 35).

On May 27, 2014, Griffin, *pro se*, filed a notice of appeal of the state appellate court's judgment in the Ohio Supreme Court. (R. 9-1, Ex. 36). In his memorandum in support of jurisdiction, Griffin raised the following propositions of law:

1. Whether the Ninth District Court of Appeals erred when it denied Appellant's motion for leave to file an application for enlargement of time to file a delayed application for reconsideration?

2. When appellate counsel improperly litigate[s] an argument on behalf of his client, is the defendant denied effective assistance of appellate counsel as guaranteed by Section 10, Article [I], of the Ohio Constitution and the Sixth and Fourteenth amendments to the United States Constitution?

3. When the prosecutor fails to correct false testimony at trial does he/she committ [sic] prosecutorial misconduct?

4. Whether Appellant's convictions are against the manifest weight of the evidence?

(R. 9-1, PageID# 841, Ex. 37).

On September 3, 2014, the Ohio Supreme Court declined jurisdiction over the appeal. (R. 9-1, Ex. 39).

12

### D.      Other Post-Conviction State Court Filings

Meanwhile, on May 9, 2012, Griffin, *pro se*, filed a petition to vacate or set aside judgment of conviction or sentence with the trial court. (R. 9-2, Ex. 40). In his petition, he raised the following claims and supporting facts:

1.      Petitioner was deprived of his Fourth, Fifth, Sixth, and [Fourteenth] amendment rights. Trial counsel, Kenneth M. Lieux[,] performed ineffectively.

2.      Petitioner's rights to due process under the Fifth, and Fourteenth amendments [were] violated. Trial counsel[,] Kenneth M. Lieux[,] failed to prepare for trial, or to investigate Petitioner's case properly.

3.      Petitioners [sic] Sixth Amendment right to due process was violated. Prior to trial, Petitioner expressed a conflict of interest against counsel, and was repeatedly advised by Honorable Judge Mark Betleski, as to his knowledge of counsels [sic] competency.

4.      Petitioners [sic] Sixth and Fourteenth amendment right[s] to the United States federal constitution was violated. Petitioner was held in jail for[] 21 months pending trial[] against his will.

5.      Petitioners [sic] Fifth and[] Fourteenth amendment rights to the United States Constitution and Section 16, Article I of the Ohio Constitution was violated. In this[] case, trial counsel, prosecutions [sic], attorneys and the lead detectives [sic] misconduct led to Petitioners [sic] wrongful conviction.

6.      Petitioners [sic] Eighth[] Amendment right against cruel and unusual punishment was violated. Petitioner[] was wrongful[ly] acused [sic], and[] detectives[] and prosecutors[] failed to properly investigate the case.

7.      Petitioners [sic] Fourth Amendment right to the United States Constitution was violated. Petitioners [sic] vehicle (1993 Cadilac [sic]), was confiscated without a search warrant.

(R. 9-2, Ex. 40).

On or about August 1, 2012, Griffin filed a "Supplement to Petition to Vacate or Set

Aside Judgment of Conviction or Sentence," asking the court to consider several propositions, including:

> The State committed "misconduct" because it failed to correct false testimony. "A prosecutor's knowing use of perjured testimony is a violation of due process and requires reversal of a criminal conviction if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs* (1976), 427 U.S. 97, 103, 96 S.Ct. 2392, 49 L.Ed.2d 342, citing *Napue v. Illinois* (1959), 360 U.S. 264, 271, 79 S.Ct. 1173, 3 L.Ed.2d 1217.

(R. 9-2, PageID# 1255, Ex. 41) (emphasis omitted).

On November 1, 2012, Griffin again supplemented his post-conviction petition with additional argument. (R. 9-2, Ex. 43). The State filed a response requesting that the court dismiss the supplemental petition.[2] (R. 9-2, Ex. 44).

On September 8, 2014, the trial court denied Griffin's petition. (R. 9-2, Ex. 46). In its opinion, it acknowledged Griffin's *pro se* "supplemental pleadings," but addressed only the seven grounds for relief raised in his original post-conviction petition. (R. 9-2, Ex. 46).

On October 17, 2014, Griffin filed a notice of appeal of the trial court's judgment in the court of appeals. (R. 9-1, Ex. 47). He raised the following assignments of error:

1. The trial court erred and abused its discretion when it held that Griffin presented no reliable evidence to support a claim of ineffective assistance of counsel.

   Issue presented for review: A defendant in a criminal case has a constitutional right to the effective assistance of counsel. In this case, Griffin's trial counsel failed to prepare for trial, or to investigate the circumstances of Griffin's case. Were Mr. Griffin's rights to effective counsel violated?

2. The trial court erred and abused its discretion when it held that Griffin's trial counsel performed effective assistance of counsel.

   Issue presented for review: In order to survive constitutional scrutiny, a

---

[2] According to the trial court's docket, the court did not rule on the State's request.

guilty verdict must be supported by evidence which is sufficient to prove each and every element of the offenses beyond a reasonable doubt. In this case, Griffin's trial counsel failed to present known credible witnesses who could have raised reasonable doubt as to Griffin's guilt. Was Mr. Griffin denied his right to a fair trial due to counsel's ineffective assistance?

3. The trial court erred and abused its discretion by not granting Appellant-Griffin an evidentiary hearing.

Issue presented for review: Whether the prosecutor's [sic] in this case committed misconduct by presenting false evidence and testimony during trial. Were Mr. Griffin's constitutional rights violated?

(R. 9-2, Ex. 48).

On May 18, 2016, the state appellate court affirmed. (R. 9-2, Ex. 50).

On September 29, 2016, Griffin filed a *pro se* "Delayed Application for Reconsideration" with the state appellate court, which the court denied as untimely. (R. 9-2, Exs. 51 & 53).

**E.     Federal Habeas Petition**

Griffin filed the pro se petition for writ of habeas corpus now before this court on May 1, 2017. (R. 1). He asserts the following grounds for relief:

**GROUND ONE**: Ineffective assistance of counsel

*Supporting Facts*: The record clearly show[s] that Petitioner's trial counsel failed to properly investigate credible witnesses, failed to impeach a State's key witness whom clearly committed perjury. Failed to have Petitioner's private investigator testify at trial with exculpatory evidence. Failed to obtain a cell phone expert to prove Petitioner's defense.

**GROUND TWO**: Prosecutor[ial] misconduct

*Supporting Facts*: The record clearly shows the prosecutor's [sic] in this case "knowingly" presented the perjured testimony of a key State witness to secure a conviction.

**GROUND THREE**: Petitioner was held in confinement with an excessive bond for 21 months in violation of his speedy trial rights.

15

**GROUND FOUR**: Ineffective assistance of appellate counsel.

*Supporting Facts*: The record shows that Petitioner's appellate counsel failed to raise genuine issues. Counsel failed to review the trial transcript thoroughly allowing valueable [sic] issues to be barred by res judicata. Counsel failed to advise Petitioner on time regarding appeals / postconviction petitions.

(R. 1).

## III. Analysis

### A.      Exhaustion Standard

State prisoners must exhaust their state remedies before raising claims in federal habeas corpus proceedings. *See* 28 U.S.C. § 2254(b), (c). This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). However, if relief is no longer available in state court, exhaustion can be rendered moot: "If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts." *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *see also Buell v. Mitchell*, 274 F.3d 347, 349 (6th Cir. 2001) ("a petitioner cannot circumvent the exhaustion requirement by failing to comply with state procedural rules.") (citations omitted).

### B.      Procedural Default Standard

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)).

A claim may become procedurally defaulted in two ways. *Id.* First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[1] *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *See, e.g.*, *Engle v. Isaac*, 456 U.S. 107, 125-130 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts. AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28. Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id.* In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id.* Thus, if an Ohio petitioner failed to raise a claim on direct

---

[1] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id.* at 138-39; *accord Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002).

appeal, which could have been raised, the claim is procedurally defaulted. *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). A petitioner can take four actions in his brief that are significant to determining whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003), *abrogated on other grounds as recognized in English v. Berghuis*, 529 Fed. App'x 734, 744-45 (6th Cir. Jul. 10, 2013).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *See Maupin*, 785 F.2d at 138-39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id.* Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See, e.g., United States v. Frady*, 456 U.S. 152, 172 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219-20 (6th Cir. 1995); *Rust v.*

*Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Prejudice does not occur unless petitioner

demonstrates "a reasonable probability" that the outcome of the trial would have been different.

*Mason v. Mitchell*, 320 F.3d 604, 617 (6th Cir. 2003).

Finally, a petitioner's procedural default may also be excused where a petitioner is

actually innocent in order to prevent a "manifest injustice." *See Coleman*, 501 U.S. at 749-50.

Conclusory statements are not enough; a petitioner must "support his allegations of constitutional

error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy

eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v.*

*Delo*, 513 U.S. 298, 324 (1995); *accord Jones v. Bradshaw*, 489 F.Supp.2d 786, 807 (N.D. Ohio

2007) (Katz, J.)

**C.      Petitioner's Grounds for Relief**

Respondent contends that all four of Petitioner's grounds for relief are procedurally

defaulted. (R. 9, PageID# 120-135). The court agrees, as explained below, that all four of

Petitioner's grounds for relief are procedurally defaulted.

**1. Ground One: Ineffective Assistance of Trial Counsel**

For his first ground for relief, Griffin claims his trial counsel provided constitutionally

ineffective assistance by: (1) failing to properly investigate credible witnesses; (2) failing to call

Griffin's private investigator as a witness; (3) failing to obtain a cell-phone expert; and (4)

failing to impeach a key witness for the State, who allegedly committed perjury. (R. 1).

Respondent argues this claim is procedurally defaulted. (R. 9, PageID# 120-123).

Griffin raised these arguments before the state trial and appellate courts on post-

conviction review. (R. 9-2, Ex. 40). The state appellate court, the last state court to consider the

claim, reasoned as follows:

{¶9} Griffin's petition for postconviction relief contained seven grounds for relief, including a claim of ineffective assistance of counsel. Regarding Griffin's claim for ineffective assistance, the trial court found that Griffin "presented no evidence, other than his own personal statements, that was not available to him prior to the jury trial." The court held that Griffin's ineffective assistance claim was barred by *res judicata* because Griffin could have argued it on direct appeal. The trial court also held in the alternative that, even if the court were to fully consider Griffin's argument, he "presented no reliable evidence" to support his allegation of ineffective assistance of counsel.

{¶10} On appeal Griffin argues that the trial court erred in applying the doctrine of *res judicata* to his ineffective assistance of counsel claim. He also argues that he provided reliable evidence to support his claim.

{¶11} Griffin asserts that his trial counsel was ineffective because he failed to prepare for trial, did not properly investigate, and neglected to present "exculpatory evidence" and "known credible witnesses." Specifically, he contends that his counsel: (1) did not call a private investigator who had worked on the matter to testify; (2) did not retain or call to the stand a cell phone expert regarding the location of his cell phone on the night of the murder; and (3) did not call to the stand a witness who lived close to the location where the body was found. Griffin claims also that the prosecutor and police presented false testimony at trial, although it is unclear whether and how Griffin intends for this allegation to form part of his ineffective assistance of counsel claim. Griffin asserts that he was entitled to a hearing on his petition for postconviction relief.

{¶12} "Under the doctrine of *res judicata*, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial * * * or on [direct appeal]." *State v. Szefcyk*, 77 Ohio St.3d 93 (1996), syllabus. "It is well-settled that, 'pursuant to *res judicata*, a defendant cannot raise an issue in a [petition] for postconviction relief if he or she could have raised the issue on direct appeal.'" (Alteration sic.) *State v. Phillips*, 9th Dist. Summit No. 20692, 2002 WL 274637, *3 (2002), quoting *State v. Reynolds*, 79 Ohio St.3d 158, 161(1997). Accordingly, to avoid preclusion by *res judicata*, a petitioner must produce new evidence that would make the judgment void or voidable, and must also demonstrate that he could not have appealed the claim based upon information contained in the original record. Phillips at *3. When the issue of competent trial counsel could have been determined on direct appeal without resort to evidence outside of the record, *res judicata* is a proper basis to dismiss a petition for postconviction relief. *State v. Cole*, 2 Ohio St.3d 112 (1982), syllabus, *State v. Lentz*, 70 Ohio St.3d 527, 530 (1994).

{¶13} Griffin has not presented any new evidence to support his ineffective assistance of counsel claim. His claim instead depends on evidence drawn from the trial court record or evidence that was available to him at the time of trial. Griffin attached to his petition a lab report that was submitted into evidence. He also attached excerpts from police reports that were included in discovery and thus were made part of the record. Questions that Griffin wanted his trial counsel to ask were marked as an exhibit by the trial court for purposes of appeal. Moreover, Griffin's claim that the prosecutor and police presented false testimony at trial depends on testimony in the trial record. In addition, the investigator report Griffin submitted with his petition was available to Griffin at the time of trial and at the time of his direct appeal. Although not a part of the trial record, this evidence does not defeat the doctrine of *res judicata* because it does not meet the "'threshold standard of cogency'" necessary to overcome the doctrine. *State v. Dovala*, 9th Dist. Lorain No. 08CA009455, 2009-Ohio-1420, ¶ 10, quoting *State v. Stallings*, 9th Dist. Summit No. 19620, 2000 WL 422423, *1 (Apr. 19, 2000). Griffin does not make any cogent argument, nor is it apparent from the report itself, why this evidence "demonstrate[s] that the claims advanced in the petition could not have been fairly determined on direct appeal based on the original trial court record." *Stallings* at *1. Further, Griffin's affidavit composed of general conclusory statements without any supporting evidence is insufficient to constitute new evidence that would bar application of the *res judicata* doctrine. *See State v. Shirey*, 9th Dist. Summit No. 20930, 2002-Ohio-4151, ¶ 16. Accordingly, Griffin attempts to advance arguments that he could have raised on direct appeal. As such, *res judicata* was a proper basis for the trial court to dismiss Griffin's petition for postconviction relief. *See Dovala* at ¶ 13; *State v. Keenan*, 9th Dist. Summit No. 20633, 2002-Ohio-218, 2002 WL 57999, *2 (Jan. 16, 2002).

{¶14} Contrary to his position, Griffin was not entitled to a hearing prior to the dismissal of his petition on *res judicata* grounds. *Res judicata* is a proper basis upon which to dismiss a petition for postconviction relief without a hearing. *Cole* at 113; *Shirey* at ¶ 16.

{¶15} We find that the trial court properly dismissed Griffin's petition for postconviction relief without a hearing on the basis of *res judicata*. Accordingly, we need not examine whether Griffin presented reliable evidence in support of his claim of ineffective assistance of counsel. Because the trial court did not abuse its discretion in dismissing Griffin's petition for postconviction relief as barred by *res judicata*, Griffin's assignments of error are overruled.

*Griffin*, 2016 WL 2855532, at *2-3.

The state appellate court, therefore, found each of Griffin's trial counsel ineffective-

assistance claims barred by the *res judicata* doctrine, as they could have been raised on direct

appeal. The Sixth Circuit consistently has held that the *res judicata* rule is an adequate and independent ground for denying federal habeas relief. *See, e.g., Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006); *Coleman v. Mitchell*, 268 F.3d 417, 427–29 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000).

Griffin further defaulted this claim by failing to appeal the state appellate court judgment to the Ohio Supreme Court, leaving him with no available state-court remedy. *See, e.g., Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990) (to preserve claims for federal habeas review, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims"); Ohio S. Ct. Prac. R. 7.01(A)(1), (A)(4)(c) (notice of appeals in Ohio Supreme Court must be filed within forty-five days from entry of judgment being appealed and delayed appeals are not permitted in post-conviction proceedings); *Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002) ("[I]f an unexhausted claim would be procedurally barred under state law, that claim is procedurally defaulted for purposes of federal habeas review."). Ground one, therefore, is procedurally defaulted.

### a. Cause for Default

Griffin generally advances three causes to excuse the default of all his procedurally defaulted habeas claims: (1) appellate counsel's failure to present the claims on direct appeal; (2) appellate counsel's failure to properly advise him about post-conviction procedures; and (3) his status as a *pro se* litigant and ignorance of the law. (R. 17, PageID# 2659-2664). None of these allegations, however, are sufficient cause to excuse the default of his ineffective assistance of trial counsel claims.

It is true that "[a]ttorney error that constitutes ineffective assistance of counsel is cause" to excuse the procedural default of a habeas claim. *Coleman v. Thompson*, 501 U.S. 722, 754

(1991). The Supreme Court has held that a defendant is entitled to effective assistance of counsel in his first appeal as a matter of right. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Courts apply the two-part test for ineffectiveness of trial counsel, enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984), to claims of ineffective assistance of appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). Under that test, the petitioner must demonstrate: 1) that counsel's performance was deficient and fell "below an objective standard of reasonableness"; and (2) that he or she was prejudiced by counsel's errors such that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694. Reviewing courts, however, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks and citations omitted). Indeed, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690.

Moreover, an appellant has no constitutional right to have every non-frivolous issue raised on appeal, *Jones v. Barnes*, 463 U.S. 745, 750-54 (1983), and tactical choices regarding issues to raise on appeal are properly left to the sound professional judgment of counsel, *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). "[O]nly when issues are clearly stronger than those presented, will the presumption of effective assistance of [appellate] counsel be overcome." *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003) (internal quotation marks and citations omitted).

Griffin raised only one claim in state court asserting ineffective assistance of appellate counsel that was based on a failure to raise a *trial* counsel ineffective-assistance claim. In his

application to reopen his direct appeal, Petitioner argues that appellate counsel should have

presented an ineffective-assistance claim based on trial counsel's failure to obtain certain

experts. (R. 9-1, Ex. 28). The state appellate court, the last state court to review that claim,

rejected it, stating:

> "[T]he failure to call an expert and instead rely on cross-examination does not
> constitute ineffective assistance of counsel." *State v. Nickolas*, 66 Ohio St.3d 431,
> 436 (1993). The record reflects that Appellant's trial counsel cross-examined all
> of the experts in this matter, and Appellant has not argued that trial counsel's
> cross-examination was deficient. Appellant has not shown that he is entitled to
> have his appeal reopened on the foregoing basis.
>
> Appellant has failed to show that the performance of his appellate counsel fell
> below an objective standard of reasonableness. Therefore, he has failed to meet
> the first prong of the *Strickland* test.

(Doc. No. 9-1, Ex. 29).

The court agrees with the state appellate court that a trial attorney's decision not to call an

expert to rebut a State expert, but instead to expose flaws in the State expert's testimony through

cross-examination, is presumed to be sound trial strategy. The Supreme Court has explained:

> ... *Strickland* does not enact Newton's third law for the presentation of evidence,
> requiring for every prosecution expert an equal and opposite expert from the
> defense.
>
> In many instances cross-examination will be sufficient to expose defects in an
> expert's presentation. When defense counsel does not have a solid case, the best
> strategy can be to say that there is too much doubt about the State's theory for a
> jury to convict. . . . Here Richter's attorney represented him with vigor and
> conducted a skillful cross-examination. As noted, defense counsel elicited
> concessions from the State's experts and was able to draw attention to weaknesses
> in their conclusions stemming from the fact that their analyses were conducted
> long after investigators had left the crime scene. For all of these reasons, it would
> have been reasonable to find that Richter had not shown his attorney was deficient
> under *Strickland*.

*Harrington v. Richter*, 562 U.S. 86, 111 (2011); *see also Boyle v. McKune*, 544 F.3d 1132, 1139 (10th Cir. 2008) ("decision of which witnesses to call is quintessentially a matter of strategy for the trial attorney"); *Bower v. Quarterman*, 497 F.3d 459, 467 (5th Cir. 2007) ("An early formulation of trial strategy and a decision to attack the state's expert witnesses on cross examination rather than calling additional experts can be a part of a reasonable trial strategy.").

A review of Griffin's trial counsel's cross-examination of the State's experts reveals that defense counsel challenged the experts' findings and opinions, and his performance fell well within the "wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Griffin, therefore, has not overcome the presumption that his trial counsel's strategy regarding experts was reasonable. Therefore, appellate counsel's alleged failure to raise such a claim does not constitute cause necessary to overcome the procedural default.

In addition, claims of ineffective assistance of appellate counsel cannot provide cause for the procedural default of another claim if the ineffective-assistance claim itself is procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). Griffin never alleged in state court that his appellate counsel was ineffective for failing to raise the other trial counsel ineffective-assistance claims Griffin asserts here. *See Franklin v. Bradshaw*, 695 F.3d 439, 454 (6th Cir. 2012) (A "claim never raised in state court . . . is defaulted."); *State v. Williams*, 99 Ohio St.3d 179, 181 (Ohio 2003) ("[T]here is no right to file successive applications for reopening . . . .").

Griffin also appears to argue that this procedural default should be excused because appellate counsel allegedly did not advise him about the filing procedures governing reopening applications. The Sixth Circuit, however, repeatedly has held that a Rule 26(B) proceeding is a separate collateral proceeding from the original direct appeal; and, therefore, petitioners have no constitutional right to assistance of counsel in such proceedings. *See, e.g., Lopez v. Wilson*, 426

F.3d 339, 351 (6th Cir. 2005). Thus, appellate counsel's conduct in connection with a Rule 26(B) application cannot establish ineffective assistance of counsel or, of relevance here, cause to overcome a procedural default. *See, e.g., Carter v. Mitchell*, 693 F.3d 555, 565 (6th Cir. 2012) (appellate counsel's failure to appeal denial of Rule 26(B) application to Ohio Supreme Court not sufficient cause); *Scuba v. Brigano*, 527 F.3d 479, 489 (6th Cir. 2007) (appellate counsel's failure to file a timely Rule 26(B) application on petitioner's behalf not sufficient cause).

The Sixth Circuit has held that appellate counsel on direct appeal do have a duty to advise criminal clients of time limits for seeking state post-conviction relief, and their failure to do so may establish cause for the procedural default of claim of ineffective assistance of trial counsel. *Gunner v. Welch*, 749 F.3d 511, 520 (6th Cir. 2014). Here, however, the state courts' post-conviction rulings did not deny Griffin's ineffective-assistance claims on timeliness grounds but on the basis of *res judicata*. Any advice from appellate counsel concerning direct appeal or post-conviction filing requirements, therefore, is irrelevant to Griffin's post-conviction trial counsel ineffective-assistance claims and cannot establish cause for the default of those claims. Moreover, Griffin never raised such an ineffective assistance argument in state court and, as explained above, he no longer is able to do so. Thus, appellate counsel's alleged failure to advise Griffin regarding Ohio App. R. 26(B) applications or post-conviction procedures does not constitute sufficient cause to excuse the default of his ineffective assistance of *trial* counsel claims. *Edwards*, 529 U.S. at 453.

Finally, Griffin cannot rely on his *pro se* status and ignorance of the law to provide cause for this claim's procedural default. It is well-established that "[c]ause for procedural default exists where something *external* to the petitioner, something that cannot fairly be attributed to him, . . . impeded his efforts to comply with the State's procedural rule." *Maples v. Thomas*, 132

S. Ct. 912, 922 (2012) (emphasis original) (citations and internal quotations omitted). The Sixth Circuit repeatedly has rejected petitioners' attempts to blame their failure to comply with procedural requirements on their ignorance of the law or on their limited prison resources. *See, e.g.*, *Bonilla v. Hurley,* 370 F.3d 494, 498 (6th Cir. 2004) (finding a petitioner's *pro se* status, ignorance of the law and court procedural requirements, and limited time in a prison law library insufficient to excuse a procedural default). Accordingly, Griffin has not established cause for the default of his trial counsel ineffective-assistance claim. Because he has not demonstrated cause, the court need not consider the "prejudice" prong of the procedural default analysis of this claim. *See, e.g., Simpson v. Jones,* 238 F.3d 399, 409 (6th Cir. 2000).

### b. Actual Innocence

Griffin also has failed to show that he is actually innocent, such that the default should be excused. The Supreme Court has held that the "actual innocence" exception to the cause and prejudice requirement is a "narrow exception," which applies only where a constitutional violation has "probably resulted" in the conviction of one who is "actually innocent" of the substantive offense. *Dretke v. Haley*, 541 U.S. 386, 392 (2004). To demonstrate "actual innocence," a petitioner must show "'by clear and convincing evidence that, but for constitutional error, no reasonable juror would have found the petitioner [guilty] under the applicable state law.'" *Id.* (quoting *Sawyer v. Whitley*, 505 U.S. 333, 336 (1992)). The claim requires a showing of "new reliable evidence" and factual innocence, not mere legal insufficiency. *See Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Bousley v. United States*, 523 U.S. 614, 623 (1998).

Griffin provides a detailed account of alleged "poor police work" in his case and misleading, contradictory, and alleged unreliable testimony of State witnesses. (R. 17, PageID#

2619-2644). But he presents no *new* evidence to show that he is "actually innocent" of the offenses for which he was convicted. He draws only on trial testimony and exhibits from his state post-conviction petition, such as police reports, which the state appellate court noted were available to Griffin at trial and in the state-court record. *See Griffin*, 2016 WL 2855532, at *3. Griffin, therefore, has not demonstrated that the procedural default of his claim of ineffective assistance of trial counsel should be excused based on new, reliable evidence that he is actually innocent of the crimes for which he was convicted.  Accordingly, the court finds that Griffin's first ground for relief is procedurally defaulted and recommends that it be dismissed.

### 2. Ground Two: Prosecutorial Misconduct

Griffin claims in his second ground for relief that the prosecution knowingly presented the allegedly false testimony of a key State witness. (R. 1.) Specifically, he contends the prosecution permitted his wife, Ronaye Ewing, to testify that the door to the apartment she shared with Griffin "was kicked-in and she called police" when they knew her testimony was false. (R. 17, PageID# 2672-2674). Respondent argues this claim also is procedurally defaulted, because, as with his first ground for relief, the state appellate court held on post-conviction review that it was barred by *res judicata*, and Griffin did not appeal the state appellate court's denial of the claim to the Ohio Supreme Court. (R. 9.)

Griffin raised this claim in state court on post-conviction review. (R. Exs. 40, 41 & 48.)[1] The state appellate court, the last state court to review the claim, stated as follows:

---

[1] Griffin also raised this prosecutorial-misconduct claim in the state appellate court on direct appeal in a "Request [for] Leave to Transmit and Certify the Record, and File Pro-Se Assignments of Error." (R. 9-1, Ex. 20). The state appellate court did not grant leave to file additional assignments of error, and it never addressed such a claim it its opinion. (R. 9-1, Ex. 21). Instead, the court addressed only the five claims presented in Griffin's original appellate brief. *Id.*

28

Moreover, Griffin's claim that the prosecutor and police presented false testimony at trial depends on testimony in the trial record. In addition, the investigator report Griffin submitted with his petition was available to Griffin at the time of trial and at the time of his direct appeal. Although not a part of the trial record, this evidence does not defeat the doctrine of *res judicata* because it does not meet the "'threshold standard of cogency'" necessary to overcome the doctrine.

*Griffin*, 2016 WL 2855532, at *3. Griffin did not appeal this judgment to the Ohio Supreme Court.

Similar to Griffin's first ground for relief, this claim is procedurally defaulted because the state court found it barred from review by the *res judicata* doctrine and because Griffin did not fairly present this claim to the state courts. *See, e.g., Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006) (*res judicata* rule is an adequate and independent ground for denying federal habeas relief); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (habeas petitioners fully exhaust claims by giving state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process").

Again, as with his first claim, Griffin has not presented sufficient cause to excuse his default. He cannot argue that appellate counsel ineffective assistance based on a failure to raise this claim constitutes cause to excuse this default, because that claim itself is procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). Griffin raised that claim in an "application for reconsideration" of his reopening application in state appellate court. (R. 9-1, Ex. 34.) The state appellate court denied Petitioner's request for reconsideration as untimely. (R. 9-1, Ex. 35.) Dismissal of a Rule 26(B) application as untimely is an adequate and independent state procedural bar preventing habeas review. *See, e.g., Landrum v. Mitchell,* 625 F.3d 905, 934 (6th Cir. 2010) ("Because the timeliness requirements of Rule 26(B) were firmly established and regularly followed by September 1998, they are an adequate and independent

29

state procedural bar."); *Fautenberry v. Mitchell*, 515 F.3d 614, 640–41 (6th Cir. 2008)). Also, as stated above, appellate counsel's alleged failure to advise Griffin about Rule 26(B) procedures does not constitute cause to excuse that default. *See, e.g., Scuba v. Brigano*, 527 F.3d 479, 489 (6th Cir. 2007) (appellate counsel's failure to file a timely Rule 26(B) application on petitioner's behalf not sufficient cause). Thus, appellate counsel's alleged failure to raise this prosecutorial-misconduct claim does not constitute sufficient cause to excuse the claim's procedural default. Likewise, as explained above, any appellate counsel ineffective-assistance claim based on advice from direct appeal counsel regarding post-conviction procedures is insufficient to excuse this default because that claim was itself defaulted due to Griffin never raising it in state court. Griffin's unsupported assertions of actual innocence also fail to excuse his default. Griffin's second ground for relief, therefore, also is procedurally defaulted and the court recommends that it be dismissed.

### 3. Ground Three: Speedy Trial

Griffin asserts in his third ground for relief that the trial court violated his right to a speedy trial. (R. 1). Respondent argues this claim is also procedurally defaulted, because Griffin first raised it in a post-conviction petition before the trial court, which found the claim barred by *res judicata*. (R. 9, PageID# 116-117). Respondent further contends that Griffin did not appeal that determination to the higher state courts. *Id*.

The trial court on post-conviction review was the only state court to consider this claim, reasoning:

> In his fourth ground for relief, Defendant asserts that his speedy trial rights were violated. As all the evidence Defendant presents on this issue was presented to the trial court, Defendant is precluded form asserting this issue in a post-conviction petition. *State v. Perry* (1967), 10 Ohio St.2d 175. Moreover, the evidence contained within the court record confirms that Defendant's speedy trial right was

not violated. On at least three occasions Defendant specifically waived his speedy trial rights, May 24, 2010, June 21, 2010 and July 12, 2010. There is no evidence that Defendant ever withdrew those waivers. In addition, throughout the discovery process Defendant, either pro se or through counsel, submitted numerous motions which would have tolled the running of the speedy trial period. Whether Defendant raised that issue with the Court of Appeals or not, Defendant is precluded from asserting it in the Petition, and the facts confirm the trial court made the right decision.

(R. 9-2, Ex. 46).

Thus, the trial court found this claim barred by the *res judicata* doctrine because it was based on evidence contained in the trial-court record and should have been raised on direct appeal. *Id.* As explained above, Ohio's *res judicata* rule is an adequate and independent ground for denying federal habeas relief. *See, e.g., Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006); *Coleman v. Mitchell*, 268 F.3d 417, 427–29 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000).

Griffin argues the court misapplied the *res judicata* rule, because a speedy-trial claim "may still be raised in a post conviction relief action." (R. 17, PageID# 2678). Griffin is correct that speedy-trial claims may be raised in post-conviction proceedings in Ohio. *See Bellman v. Jago*, 38 Ohio St.3d 55, 55 (Ohio 1988) (*per curiam*) (right to a speedy trial is "appropriately raised . . . through post-conviction relief proceedings").[1] To overcome the *res judicata* bar to post-conviction review in Ohio, however, a petitioner must present "new evidence" *dehors*, or outside, the record supporting the claim. *See, e.g., State v. Smith*, 17 Ohio St.3d 98, 101 n.1 (Ohio 1985). To fall within this exception, "it is not sufficient for the petitioner to simply present

---

[1] Griffin' reliance on *State v. Mock*, 187 Ohio App.3d 599 (Ohio Ct. App. 2010), is misplaced. That decision concerned a claim of ineffective assistance of trial counsel for failing to file a motion to dismiss on speedy-trial grounds, not a freestanding speedy-trial claim. *Id.* at 604.

evidence outside the record, he must also demonstrate that the evidence was not available at the time of his trial, or at the time of his direct appeal." *State v. Jones*, 2002 WL 31812945, at *3 (Ohio Ct. App. Dec. 13, 2002). Here, the state trial court found that all the evidence Griffin presented in support of his speedy-trial claim was contained in the trial-court record. Griffin does not refute that finding. The state court, therefore, did not misapply the *res judicata* bar to this claim, and ground three is procedurally defaulted on that basis.

Griffin further procedurally defaulted his speedy-trial claim by failing to appeal the trial court's denial of his claim on post-conviction review to the state appellate court or Ohio Supreme Court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (habeas petitioners fully exhaust claims by giving state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"). Petitioner has no remaining state-court remedy for this claim. *State v. Nichols*, 11 Ohio St.3d 40, 43 (Ohio 1984) ("[W]e hold a delayed appeal pursuant to App. R. 5(A) is not available in the appeal of a post-conviction relief determination . . . .").

Moreover, as explained above, Griffin offers no valid argument regarding the cause for the default. He did not raise any claim alleging appellate counsel ineffective assistance relating to this claim in state court; he no longer can do so; and he offers no cause for that omission. Again, he has not raised a credible claim of actual innocence based on new, reliable evidence.

The court, therefore, finds Griffin's third ground for relief also is procedurally defaulted and recommends that it be dismissed.

**4. Ground Four: Ineffective Assistance of Appellate Counsel**

Griffin's fourth ground for relief alleges his appellate counsel provided ineffective assistance by failing "to review the trial transcript thoroughly[,] allowing valuable issues to be

barred by res judicata" and by failing "to advise [him] on time regarding appeals / [p]ost-conviction [p]etitions." (R. 17, PageID# 2649). Griffin attaches correspondence between him and appellate counsel as support. (R. 17, Ex. 11). Respondent argues the claims are procedurally defaulted and meritless. (R. 9, PageID# 128-129).

As Respondent points out, Griffin's claim that appellate counsel failed to properly review the trial transcript for appealable issues is too vague and conclusory to be actionable. He does not specify the basis for this claim or provide any developed argumentation whatsoever. It is true that as a *pro se* litigant, Griffin's pleadings must be liberally construed. *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (*per curiam*) (stating *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers"); *see also Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985) ("The allegations of a pro se habeas petition, though vague and conclusory, are entitled to a liberal construction," and "[t]he appropriate liberal construction requires active interpretation in some cases to construe a pro se petition to encompass any allegation stating federal relief" (internal quotation marks and citations omitted)). But principles requiring generous construction of *pro se* pleadings are not without limits. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir. 1985). District courts are not required to conjure up questions never squarely presented to them or to construct full-blown claims from sentence fragments. *Id.* at 1278. To do so would "require . . . [the courts] to explore exhaustively all potential claims of a *pro se* plaintiff, . . . [and] would . . . transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Id.*; *see also Erwin v. Edwards*, 22 F. Appx. 579, 580 (6th Cir. 2001) ("Although liberal construction requires active interpretation of the filings of a pro se litigant, . . . it . . . does not require a court to conjure allegations on a litigant's behalf . . . .") (internal citations omitted).

Such is the case here, where even liberally construed, Griffin's broad claim that his appellate counsel did not properly review his transcript to identify and raise claims on appeal does not contain sufficiently specific allegations to reasonably state a valid claim.

To the extent Griffin is complaining here that appellate counsel did not raise his above defaulted claims of ineffective assistance of trial counsel, prosecutorial misconduct, and speedy-trial violation, those claims as well as his claim that appellate counsel was ineffective for failing to advise him about time limits for filing appeals and post-conviction petitions, are procedurally defaulted as explained above. The only claim of ineffective assistance of trial counsel he raised pertained to expert testimony in his original application to reopen his direct appeal. As he is no longer permitted to raise these theories—successive reopening applications are not permitted under Ohio law—they are unexhausted and defaulted. *See O'Sullivan*, 526 U.S. at 845; *State v. Williams*, 99 Ohio St.3d 179, 181 (Ohio 2003) ("[T]here is no right to file successive applications for reopening . . . ."). Moreover, as described above, Griffin offers no valid cause excusing his default or a credible claim of actual innocence.

Accordingly, Griffin's fourth ground for relief is procedurally defaulted and lacks merit, and the court recommends that it be dismissed.

## V. Conclusion

For the foregoing reasons, it is recommended that Griffin's Petition be DISMISSED as all his grounds for relief are procedurally defaulted.


Date: July 31, 2019                                    s/ David A. Ruiz
                                                       United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. **28 U.S.C. § 636(b)(1)**. Failure to file objections within the specified time may waive the right to appeal the district court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).